## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

PEGGY POPHAM,                          )
                                       )
      Plaintiff,                 )
                                       )
      v.                         )      CAUSE NO.: 3:15-CV-197-TLS
                                       )
KEYSTONE RV COMPANY,                   )
                                       )
      Defendant.                 )

## OPINION AND ORDER

The Plaintiff, Peggy Popham, filed an Amended Complaint [ECF No. 6] against the

Defendant, Keystone RV Company, alleging state law breach of warranty (Count I), a violation

of the Magnuson-Moss Warranty Act (Count II), and violations of Indiana and Texas consumer

protection laws (Count III). The Defendant filed a Motion for Summary Judgment [ECF No. 14]

and the Plaintiff filed a Motion for Partial Summary Judgment [ECF No. 22] as to Count I.

## PROCEDURAL BACKGROUND

The Plaintiff filed her initial Complaint [ECF No. 1] on May 7, 2015 and filed her first

Amended Complaint [ECF No. 6] on June 29, 2015. The Defendant filed an Answer [ECF No. 7]

on July 15, 2015. On January 11, 2016, the Defendant filed a Motion for Summary Judgment.

[ECF No. 14]. On March 3, 2016, the Plaintiff filed her Response in Opposition to the

Defendant's Motion for Summary Judgment [ECF No. 21] and also a Motion for Partial

Summary Judgment [ECF No. 22]. The Defendant's Reply [ECF No. 24] was filed on March 17,

2016. The Court granted the Plaintiff leave to file her Statement of Material Facts Not in Dispute

[ECF No. 32] and her Statement of Genuine Issues of Fact [ECF No. 33], dated March 29, 2016.

On April 29, 2016, the Defendant filed its Response in Opposition to the Plaintiff's Motion for

Partial Summary Judgment [ECF No. 37]. Finally, the Plaintiff's Reply [ECF No. 39] was filed on May 4, 2016.

## UNDISPUTED FACTS

The following facts are undisputed. The Plaintiff is a resident of Texas. (Pl.'s Facts Not in Dispute in Supp. Mot. Partial Summ. J. ¶ 1, ECF No. 32; Def.'s Br. in Supp. of Mot. Summ. J. ¶ 1, ECF No. 15.) The Plaintiff's current mailing address is 170 Port Avenue, Rockport, Texas, which is located within the Palm Harbor Recreational Vehicle ("RV") Park (Pl.'s Facts ¶¶ 1–2; Def.'s Br. ¶¶ 1–2.) On May 8, 2013, the Plaintiff purchased an RV that was manufactured by the Defendant, an Indiana business entity. (Pl.'s Facts ¶¶ 1–2; Def.'s Br. ¶¶ 3–4.) As part of that purchase, the Defendant offered and the Plaintiff received a one-year Limited Warranty for the RV. (Pl.'s Facts ¶ 3; Def.'s Br. ¶ 5.) On March 31, 2015, the Plaintiff discovered that the RV's roof was "bulging" and walls were "delaminating," and promptly notified the Defendant of those issues. (Pl.'s Facts ¶ 5; Def.'s Br. ¶¶ 14, 16–17.)

## THE TERMS OF THE LIMITED WARRANTY

On the first page of the Limited Warranty is the bolded heading "**Limited One Year Warranty**," centered and larger than the other text. (First Am. Compl. Ex. 3 at 23, ECF No. 6.) In the paragraph immediately below this heading, the Defendant "WARRANTS for a period of one (1) year from the date of purchase that the recreational vehicle manufactured and assembled by [the Defendant] shall be free from defects in materials and workmanship supplied and attributable to [the Defendant]." (*Id.*) Additionally, the Defendant "reserves the right to substitute parts or components of substantially equal quality, repair cosmetic flaws, make design and/or

manufacturing improvements, or in the event the unit cannot be repaired, provide a replacement unit as the exclusive remedy under this Limited Warranty." (*Id.*)

The next bolded heading states "**Warranty Disclaimers**," which is left aligned and of a similar size as the paragraph that follows the heading. (*Id.*) The subsequent paragraph states that "[t]his warranty is expressly in lieu of all other warranties, express or implied, including any implied warranty of merchantability or fitness for any particular purpose, and in lieu of all other obligations or liabilities on the part of [the Defendant]." (*Id.*) "Implied warranties, including implied warranty of merchantability or fitness for a particular purpose, if any, given by law, shall be limited to and not extend beyond the duration of the written limited warranty periods set forth herein." (*Id.*) In addition, the Limited Warranty includes a statute of limitations that "[a]ny action to enforce this limited warranty or any implied warranty shall not be brought more than one (1) year after expiration of the one (1) year term of this limited warranty." (*Id.*)

Another bolded heading states "**Warranty Exclusions – This Limited Warranty Shall Not Apply To:**" that is left aligned and of a similar size as the other text on the page. (*Id.*) Relevant to this dispute, the warranty is excluded for "**Trailers used for business, rental, commercial, residential, or disaster relief purposes, or any purposes other than recreational travel and family camping**," which is written in bolded text unlike the surrounding bulleted list and also with an exclamation point in the margin. (*Id.*) Finally, on the third page of the Limited Warranty is a heading halfway down the page which reads "**How To Obtain Warranty Service**," which is bolded and left aligned. (*Id.* at 25.) An RV owner can obtain warranty service "within a reasonable time after discovery of the defect within the warranty period." (*Id.*)

## COMPLAINT ALLEGATIONS

The Plaintiff alleges three separate Counts in her Amended Complaint against the Defendant. In Count I, the Plaintiff alleges that the Defendant breached its "express and/or implied warranties" given that "[o]ne or more of the defects and malfunctions in the vehicle were covered under the terms of the Defendant's express and/or implied warranties" (First Am. Compl. ¶ 51.) In Count II, the Plaintiff alleges a separate violation of the Magnuson-Moss Warranty Act (MMWA) because the Defendant's breach of warranty caused its "fail[ure] to comply with its obligations under the Warranty Act." (*Id.* ¶ 56.) In Count III, the Plaintiff alleges violations of state consumer protection statutes based on the Defendant's representations during the transaction, the design of the vehicle, and the Defendant's breach of warranty. (*Id.* ¶¶ 60–61.) The Plaintiff seeks relief in the form of damages and statutory damages for the alleged violations or, in the alternative, relief in the form of rescission of the contract.

## DISPUTED FACTS

The parties dispute two main facts. First, whether the Plaintiff "resides" inside of the RV. The Defendant offers an Affidavit from Ms. Baumgardner [ECF No. 16-6], the Defendant's Representative, to argue that the Plaintiff called the Defendant and stated that she resided in the RV. Additionally, the Defendant points to the undisputed fact that the Plaintiff's mailing address is located within an RV Park. However, the Plaintiff offers her own Affidavit [ECF No. 21-1] that she has "never used the RV for any other purpose besides recreational travel and family camping" or that she told Baumgardner that she "was 'living' in the RV at that time or at any time." (Popham Aff. ¶¶ 3–4.)

The second dispute is whether the RV's roof issues, which are the subject of this litigation, were a "latent" defect that existed at the time the Plaintiff purchased the RV. The

Plaintiff offers an Affidavit from Mr. Lewis [ECF No. 23-1], a mechanic, to assert that "the roof defect is a structural defect that resulted from something being done wrong at the factory" and that such defect "was not reasonably discoverable . . . within one year [of sale]." (Lewis Aff. ¶¶ 9–10.) In opposition, the Defendant offers an Affidavit from Mr. Gaines [ECF No. 37-1], the Defendant's Service Product Manager, to argue that the "existence of bubbling is not representative of any kind of defect in the RV and that the RV is still "fit for the ordinary purpose for which it was sold." (Gaines Aff. ¶¶ 7–13.)

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in that party's favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention

that an issue of material fact exists is insufficient to create a factual dispute, a court must

construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences

in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and

avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v.

Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

For a grant of summary judgment to be fair, each party must have an opportunity to

present its full argument on an issue. *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674–75 (7th Cir.

1992). It is improper for a district court to grant summary judgment on grounds to which neither

party had an opportunity to respond. *Id.*; *see also Costello v. Grundon*, 651 F.3d 614, 635 (7th

Cir. 2011) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("[I]f the

moving party does not raise an issue in support of its motion for summary judgment, the

nonmoving party is not required to present evidence on that point, and the district court should

not rely on that ground in its decision.")).

## DISCUSSION

This Court has jurisdiction over the Plaintiff's MMWA claim, pursuant to 15 U.S.C. §

2310(d)(1)–(3), as the claim alleges an amount in controversy greater than $50,000.

Additionally, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over the

Plaintiff's state law claims for breach of warranty and consumer protection violations because

the parties are citizens of different states and the aggregated amount in controversy exceeds

$75,000. A federal court exercising diversity jurisdiction must apply the substantive law of the

forum in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including that

pertaining to choice of law, *Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 496 (1941).

However, "[i]f the difference between the state laws is illusory and no conflict exists," the

federal court merely applies the substantive law of the forum in which it sits. *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002).

## A. Breach of Warranty Claim

In Count I, the Plaintiff has alleged a claim for breach of the implied warranty of merchantability and the Defendant's express warranty,[1] each arising under the laws of Indiana and Texas. However, neither of the parties have argued that one state's law should govern the dispute. Accordingly, the Court conducts a choice-of-law analysis: Indiana and Texas have adopted the Uniform Commercial Code verbatim, and thus their laws governing breach of warranty do not conflict.[2] Accordingly, the Court will apply the substantive law of Indiana, the forum in which this Court sits, to the breach of warranty claims.

Under Indiana law, "a warranty that the goods shall be merchantable[3] is implied in a contract for their sale if the seller is a merchant with respects to goods of that kind" unless excluded or modified within the contract. Ind. Code § 26-1-2-314(1). Additionally, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Id.* § 26–1–2–313. "An action for breach . . . must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it." *Id.* § 26-

---

[1] In her Amended Complaint, the Plaintiff asserts that "[o]ne or more of the defects and malfunctions in the vehicle were covered under the terms of the Defendant's express and/or implied warranties" (First Am. Compl. ¶ 51), but the parties' Cross-Motions for Summary Judgment largely ignore the Defendant's express warranty and focus primarily on any implied warranty.
[2] *Compare* Ind. Code §§ 26-1-2-314, 26-1-2-725, *with* Tex. Bus. & Com. Code §§ 2.314, 2.725.
[3] For goods to be "merchantable," they "must at least be such as . . . are fit for the ordinary purposes for which such goods are used." Ind. Code § 26-1-2-314(2).

1-2-725(1). As a preliminary matter, the Court must consider whether the Plaintiff's claim commenced within the applicable limitations period, which is four years unless modified. *Id.*

Here, the Plaintiff and Defendant validly reduced the limitations period to one year. Both signed the sales agreement, which stipulated that "[a]ny action to enforce the warranty shall not be brought more than one year after expiration of the one year term of this limited warranty" (First Am. Compl. Ex. 3 at 23), as well as that "[i]mplied warranties . . . shall be limited to . . . the duration of the written limited warranty periods set forth herein," (*id.*) The Plaintiff purchased her RV from the Defendant on May 8, 2013. The Defendant's one-year warranty ended on May 8, 2014, and the Plaintiff filed her initial Complaint on May 7, 2015. Thus, it would appear that the Plaintiff satisfies the requirement that an action be brought within "one year after the expiration of the one year term" under the Defendant's Limited Warranty. (*Id.*)

However, the Defendant argues that to obtain repairs covered by the Warranty's express terms, an RV owner "must deliver the [RV] to an authorized Keystone dealer . . . within a reasonable time after discovery of the defect *within the warranty period*." (Def.'s Br. 9–10.) The RV's roof defect was discovered 10 months after the Limited Warranty ended. Thus, the Defendant argues that it was no longer obligated to provide repair service under the terms of the Limited Warranty, and accordingly cannot be in breach. In effect, allowing the Plaintiff's claim for breach of warranty to go forward would extend the Limited Warranty's length beyond its one-year term.

A breach of warranty "occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should

have been discovered."[4] Ind. Code § 26-1-2-725(2). A cause of action for breach of warranty "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.*; *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 56 N.E.3d 38, 44 (Ind. Ct. App. 2016). The Seventh Circuit instructs that "the point at which a cause of action accrues may be determined as a matter of law if the relevant facts are undisputed and they lead to but one conclusion." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). "If the accrual determination turns on the resolution of factual questions, however, summary judgment is inappropriate, and the statute of limitations issue" is one for the factfinder to decide. *Id.*

1.      ***Breach of the Express Warranty***

When breach of an express warranty occurs is a straightforward analysis: it must occur, if it is to occur at all, before the express warranty ends. Ind. Code § 26-1-2-725(2). Here, the parties contracted for a Limited Warranty that was to last for one year from the time of purchase (May 8, 2013, to May 8, 2014). During that effective period the Plaintiff encountered numerous mechanical issues with the RV and raised them to the Defendant, which the Defendant promptly remedied. The alleged breach of warranty involving the RV's roof occurred on March 31, 2015, which was ten months after the Limited Warranty ended. Accordingly, the Plaintiff does not have a claim against the Defendant for breach of an express warranty and the Defendant is entitled to judgment as a matter of law.

---

[4] The exception for future performance only applies to breach of an express warranty because "[a]n implied warranty by its very nature cannot explicitly extend to future performance." *Stumler v. Ferry Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir. 1981). "The word 'explicit' means express, definite. Implied warranties simply are not express or definite. Thus, . . . claims based on implied warranties accrue, if at all, at the time of delivery." *Id.*

## 2. *Breach of the Implied Warranty of Merchantability*

When a breach of the implied warranty of merchantability occurs is a similar analysis—it must occur, if it is to occur at all, at the time the product is delivered. *Id.* § 26-1-2-725(2).[5] The Defendant allegedly breached the implied warranty of merchantability when the Plaintiff purchased the RV on May 8, 2013.[6] However, the RV's roof issue arose, and the Plaintiff raised her breach of warranty claim, ten months after the Limited Warranty expired. The issue becomes whether a latent defect, such as the RV's alleged roof bubbling and separation, enables the Plaintiff to maintain her breach of implied warranty claim. The Court concludes it does not.

Indiana courts "have regularly held that unless a contractual provision contravenes a statute or public policy, actions . . . that are brought after the expiration of the limitation period provision will be barred." *E.g.*, *New Welton Homes v. Eckman*, 830 N.E.2d 32, 35–36 (Ind. 2005) (internal quotation marks omitted); *Brunner v. Econ. Preferred Ins. Co.*, 597 N.E.2d 1317, 1318 (Ind. Ct. App. 1992). "Failure to discover a loss within the time provided under the contract for bringing a claim is immaterial." *New Welton*, 830 N.E.2d at 35 (citing *Brunner*, 597 N.E.2d at 1318–19). Whereas a discovery rule for accrual is appropriate in tort actions, which is a form of liability imposed by law, it is inappropriate in contract actions, as the assignment of contractual liability is "the product of an agreement of the parties." *New Welton*, 830 N.E.2d at

---

[5] Finding that a breach of implied warranty occurs at the time delivery is tendered seems inequitable because the purchaser may be unable to assess "conformity with a warranty at the time of delivery." *Dart Indus., Inc. v. Adell Plastics, Inc.*, 517 F. Supp. 9, 11 (S.D. Ind. 1980). But the drafters of section 26-1-2-725(2) believed that "[a] seller's interest in having some clearly defined limit on the period of its potential liability apparently outweighed a buyer's interest in an extended warranty," absent express bargaining by the parties for a more extended warranty. *See Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500–05 (S.D. Ohio 2012); *Dart Indus.*, 517 F. Supp. at 11.

[6] The Plaintiff presses no argument that the warranty "explicitly extends to future performance," which would toll the limitations period until the Plaintiff discovered the roof defect. *See* Ind. Code § 26-1-2-725(2). Courts have not held that express warranties, like the Limited Warranty at issue in this case, extend to future performance. *See, e.g., Allen*, 913 F. Supp. 2d at 500–05; *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F. Supp. 614, 618–20 (D. Del. 1976); *Binkley Co. v. Teledyne Mid-Am. Corp.*, 333 F. Supp. 1183, 1187–88 (E.D. Mo. 1971).

35 (quoting *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003)); *United Tech. Auto. Sys., Inc. v. Affiliated FM Ins. Co.*, 725 N.E.2d 871, 875 (Ind. Ct. App. 2000). Here, the implied warranty period is coextensive with the express warranty, and failure to discover a roof defect during that time period does not toll the limitations provision.

The Plaintiff relies on *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285 (Ct. App. 2009), to persuade otherwise. *Mexia* considered a claim for implied warranty brought after the durational limit *and* under a California statute, the Song-Beverly Act. *Id.* at 287. The product purchased was a boat, which had a latent defect causing its engine to corrode that required engine repairs over the first two years of its lifespan. *Id.* at 288–89. Because the plaintiff alleged that the boat "failed to work properly from the outset," the plaintiff's lawsuit was allowed to proceed despite his bringing suit after the limitations period expired. *Id.* at 293–97. *Mexia*'s holding that a latent defect can render a product unmerchantable even if discovered after the durational limit was based on unique precedent[7] and a specific California statute that provided rights different from the implied warranty of merchantability, the combination of which multiple state and federal courts have used to distinguish *Mexia*. *E.g.*, *Valencia v. Volkswagen Grp. of Am., Inc.*, 119 F. Supp. 3d 1130, 1138–39 (N.D. Cal. 2015); *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1021–22 (S.D. Cal. 2011); *Larsen v. Nissan N. Am., Inc.*, No. A121838, 2009 WL 1766797, at *5–6 (Cal. Ct. App. June 23, 2009).

The Court finds persuasive the decisions of these other courts holding *Mexia* inapplicable. Here, the Plaintiff provides evidence only that the RV's roof started having issues

---

[7] *Mexia* relied upon *Moore v. Hubbard & Johnson Lumber Co.*, 308 P.2d 794 (1957). "In *Moore*, a defendant sold lumber to a contractor for construction purposes. The lumber was infested with beetles that would eat their way out of the wood, leaving holes in the wood." *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011). That specific character of a "latent defect, whether or not it was discovered, rendered the lumber unmerchantable from the outset." *Id.*

about 28 months after purchase, not that the RV "failed to *work properly from the outset*." *Marchante*, 801 F. Supp. 2d at 1021 (emphasis added). True, one of the Plaintiff's Affidavits states that "the roof defect is a structural defect that resulted from something being done wrong at the factory." (Lewis Aff. ¶¶ 9–10). But Lewis's Affidavit is not evidence that the RV's roof defect made the RV "unmerchantable from the outset." *Marchante*, 801 F. Supp. 2d at 1021. To the contrary, the evidence shows that the Plaintiff used and enjoyed the RV for nearly two years, with all maintenance issues consistently remedied throughout the Defendant's warranty period and before filing this lawsuit. Second, extending *Mexia* from its narrow application to California's Beverly-Song Act to all implied warranty actions "renders meaningless any durational limits on implied warranties" because "[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period." *Id.* at 1022.

### 3. *Plaintiff's Arguments That This Court Should Ignore the One Year Provision*

Alternatively, the Plaintiff argues that this Court should disregard the one year limitation because that provision is (1) unconscionable as a contract of adhesion and (2) fails the Limited Warranty's essential purpose. Under Indiana law, a court need not enforce a contract or any clause of that contract if it would "have been unconscionable at the time it was made."[8] Ind. Code § 26-1-2-302(1). Unconscionability is a principle "of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power." *Id.* cmt. 1. "Unconscionability is a question of law" for a court and "[t]he party raising the issue bears the burden of proof." *Martin Rispens & Sons v. Hall Farms*, 621 N.E.2d 1078,

---

[8] The Court may consider the parties' evidence in their motions when deciding the question of unconscionability. *See* Ind. Code § 26-1-2-302(2) (permitting a court to consider "evidence as to [a contract's] commercial setting, purpose and effect to aid the court in making the determination" of unconscionability).

1086 (Ind. Ct. App. 1993), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005). Additionally, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose," a court may fashion other, appropriate remedies as provided by statute. Ind. Code § 26-1-2-719(2).

First, the Court finds that the one-year Limited Warranty was not unconscionable. A one-year durational warranty is not per se unconscionable. "The possibility that a latent defect may exist is one of the risks present at the time the contract is formed," *Martin Rispens*, 621 N.E.2d at 1086, and does not, in and of itself, render a contract unconscionable. In fact, most consumers encounter time limitations in warranties for newly purchased products, oftentimes for one-year or less, and still take such a risk by going through with the purchase. *See, e.g.*, *Nation Enter., Inc. v. Enersyst, Inc.*, 749 F. Supp. 1506, 1508 (N.D. Ill. 1990) (pizza oven with one-year warranty); *Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 418 (Ct. App. 2015) (laptop with one-year warranty); *Nulite Indus. Co. v. Horne*, 556 S.E.2d 255, 256 (Ga. Ct. App. 2001) (vinyl siding and windows with one-year warranty). The Plaintiff has put forward no evidence showing that the Limited Warranty was oppressive as applied to the Plaintiff—all the evidence shows that the Defendant timely remedied RV issues during the Limited Warranty period, which is by no means unconscionable. *See Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 966 (N.D. Ill. 2000) (reasoning similarly).

Nevertheless, the Plaintiff cites to *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685 (N.Y. 1968), in support of her position that the Limited Warranty was unconscionable. In *Wilson Trading*, the warranty provision at issue barred any warranty claim made "more than 10 days after receipt of shipment." *Id.* at 686. It was a question of fact as to whether it was unreasonable to require a purchaser to detect a latent defect in such a short

timeframe and, moreover, a party very well might have discovered a latent defect at a later, but still reasonable, time. *See id.* at 688–89. The situation before the Court would be more like *Wilson Trading* if the Defendant's Limited Warranty on its RV was just 10 days. However, the Limited Warranty was 355 days longer than in *Wilson Trading*, which is grounds for distinguishing the case. Accordingly, the Court concludes that the Limited Warranty was not unconscionable as a matter of law.

Second, the Plaintiff argues that enforcement of the Limited Warranty makes the sales agreement fail of its essential purpose. In support of this point, the Plaintiff basically repackages her unconscionability arguments, and for the reasons stated above, the Plaintiff's argument misses the mark. This is because it is incongruous to claim that modification of a warranty's timetable amounts to a remedy limitation. *See Hahn v. Ford Motor Co.* 434 N.E.2d 943, 952–53 (Ind. Ct. App. 1982) (noting that warranty modification "limits the circumstances in which the seller or manufacturer may be deemed to be in breach of warranty" while a limitation of remedy "acknowledges the quality commitment but restricts the remedy available once a breach has been established"). Section 26-1-2-719 seeks to ensure "at least a fair quantum of remedy for breach of the obligations" inherent in the contract. Ind. Code § 26-1-2-719 cmt. 1. Barring a party from receiving consequential damages implicates this concern, whereas contracting for a specific time period in which to seek a remedy does not. *See Hahn*, 434 N.E.2d at 952–53.

In sum, the Court finds that there is no genuine dispute as to material facts regarding the breach of warranty claim. Although the parties dispute the root cause of the RV's roof issues, the root cause is immaterial because the defect was discovered and brought to the Defendant's attention after the one-year Limited Warranty expired. Without either an express or implied warranty, the Defendant could not have breached the warranty and the Plaintiff cannot maintain

such a claim. Lastly, the one-year limitation was not unconscionable and did not fail of its

essential purpose. Accordingly, the Defendant is entitled to judgment as a matter of law on the

Plaintiff's breach of warranty claim.[9]

## B.        Magnuson-Moss Warranty Act

The MMWA "create[s] a federal private cause of action for consumers injured by the

violation of (1) any obligation under the Act, (2) any warranty subject to the extensive regulatory

requirements of the Act, or (3) any implied warranty the deceptive and unconscionable limitation

of which was a major focus of the Act's regulatory provisions." *Skelton v. Gen. Motors Corp.*,

660 F.2d 311, 320 (7th Cir. 1981); *see also* 15 U.S.C. § 2310(d) (providing that any "consumer"

may sue if "damaged by the failure of a supplier, warrantor, or service contractor to comply with

any obligation under [the MMWA] or under a written warranty, implied warranty, or service

contract").

A gloss on a plaintiff's state law claims, the MMWA prohibits the disclaimer or

modification of any implied warranty to a consumer, except where the duration of the implied

warranty is limited for a reasonable period of time and such limitation is "conscionable" and "set

forth in clear and unmistakable language and prominently displayed on the face of the warranty."

15 U.S.C. § 2308(a) ("No supplier may disclaim or modify (except as provided in subsection (b)

of this section) any implied warranty to a consumer with respect to such consumer product if . . .

such supplier makes any written warranty to the consumer with respect to such consumer

---

[9] Alternatively, the Defendant moves for summary judgment on the breach of warranty claim because the Plaintiff allegedly utilizes the RV as her "residence." (Baumgardner Aff. ¶ 7.) Such use is a breach of the terms of the Limited Warranty that excuses the Defendant's obligations under that Warranty. For her part, the Plaintiff asserts that she has never used the RV as her "residence." (Popham Aff. ¶¶ 3–4.) The Affidavits on this matter present a genuine dispute of fact, but since the Plaintiff's claim for breach of warranty is barred for the aforementioned reasons regarding the one-year limitation, the issue of whether the Plaintiff resided in the RV is not *material* to this claim.

product."); *id.* § 2308(b) ("[I]mplied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty."). Text that is bold, written in all capital letters, and otherwise set apart satisfies § 2308. *See Rokicsak v. Colony Marine Sales & Serv., Inc.*, 219 F. Supp. 2d 810, 816–18 (E.D. Mich. 2002); *cf. Castagna v. Newmar Corp.*, No. 3:15-CV-249-TLS, 2016 WL 3413770, at *6 (N.D. Ind. June 22, 2016) (finding that the written warranty disclaimer did not satisfy § 2308 because its clarifying language was not conspicuous).

Here, the Plaintiff asserts an MMWA claim involving the breach of an implied warranty. The Defendant's Limited Warranty modified any implied warranties under state law to be coextensive in length of time with the express warranty. However, the Court has already found that a one-year limiting provision was a reasonable period of time and not unconscionable as a matter of law. Thus, for the Plaintiff's MMWA claim to survive summary judgment, she must show that this limitation is not "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." *Id.*

The Court finds that the one-year limitation satisfies the requirements of § 2308(b). The words "**Limited One Year Warranty**" are prominently displayed in centered, bolded text and larger than other text on the page. (First Am. Compl. Ex. 3 at 23.) Interspersed five times throughout the paragraphs directly below this bolded text is the phrase "one (1) year," which further highlights the limitation to the reader. (*Id.*) Admittedly, it is not altogether clear that the limitation applies to implied warranties. Reading further down the page are words that are all bolded beneath a similarly bolded headline "**Warranty Disclaimers**," and the statement that "[i]mplied warranties . . . shall be limited to and not extend beyond the duration of the written

limited warranty periods set forth herein." (*Id.*) Although this is by no means an ideal drafting of a disclaimer, the Court finds that the total composition of the page "set[s] forth in clear and unmistakable language and prominently display[s]" the fact that any RV warranty lasts for one year. 15 U.S.C. § 2308(b). Having found that the Defendant's warranty disclaimer does not violate the MMWA, the Defendant is entitled to judgment as a matter of law on this claim.

## C.      State Consumer Protection Claims

To begin, the Court must examine the consumer protection laws of Indiana and Texas to decide whether any differences between the states' laws are "illusory" or significant. *Nelson*, 288 F.3d at 963. Indiana's Deceptive Consumer Sales Act (IDCSA), Ind. Code § 24-5-0.5-1 *et seq.*, is a remedial statute that must be "'liberally construed and applied to promote its purposes and policies' of protecting consumers from deceptive or unconscionable sales practices." *Kesling v. Hubler Nissan*, 997 N.E.2d 327, 332 (Ind. 2013) (quoting § 24-5-0.5-1). Pursuant to the IDCSA, a supplier[10] commits a deceptive act when it makes certain representations "as to the subject matter of a consumer transaction, which can be made orally, in writing, or by electronic communication." § 24-5-0.5-3(b).

Such representations include, in relevant part:

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not;

*          *          *

(8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the

---

[10] A "supplier" is defined, in relevant part, as "[a] seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions. . . . The term includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer." Ind. Code § 24-5-0.5-2(a)(3)(A).

representation is false and if the supplier knows or should reasonably know that
the representation is false.

*Id.* A deceptive act is only actionable if it is either "uncured" or "incurable." *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 647 (Ind. Ct. App. 2004). An "uncured deceptive act" is defined as a deceptive act "with respect to which a consumer who has been damaged by such act has given notice to the supplier . . . but the supplier either fails to offer to cure within thirty days or does offer to cure but fails to cure within a reasonable time after the consumer accepts the offer." *Id.* (citing Ind. Code § 24-5-0.5-2) (internal quotation marks omitted); *see also id.* (noting that an intent to defraud or mislead is not an element to an uncured deceptive act). An "incurable defective act," on the other hand, is defined as an act "done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8).

Additionally, an action based on an uncured deceptive act may not be brought unless the consumer bringing the action:

> give[s] notice in writing to the supplier within the sooner of (i) six (6) months
> after the initial discovery of the deceptive act, (ii) one (1) year following such
> consumer transaction,[11] or (iii) any time limitation, not less than thirty (30) days,
> of any period of warranty applicable to the transaction, which notice shall state
> fully the nature of the alleged deceptive act and the actual damage suffered
> therefrom, and unless such deceptive act shall have become an uncured deceptive
> act.

*Id.* If a plaintiff "fails to comply with the notice procedures then his suit can only be for an incurable deceptive act," which requires a showing of intent to defraud. *McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980) (internal quotation marks

---

[11] A "consumer transaction" is defined, in relevant part, as "a sale . . . or other disposition of an item of personal property . . . a service, or an intangible . . . to an individual for purposes that are primarily personal, family, or household, or a solicitation to supply any of these things." Ind. Code § 24-5-0.5-2(a)(1).

omitted) (further noting that "whenever a consumer neglects to avail himself of the notice provisions or else improperly invokes them, an additional element of proof is imposed on him.").

Texas has also adopted a consumer protection statute, entitled the Texas Deceptive Trade Practices Act (TDTPA), Tex. Bus. & Com. Code § 17.41, *et seq.* To prevail under the TDTPA, a plaintiff must establish that: (1) the plaintiff is a consumer;[12] (2) the act complained of was a producing cause of actual damages; and (3) the act was prohibited by sections 17.50(a)(1)–(4). *Lochabay v. Sw. Bell Media, Inc.*, 828 S.W.2d 167, 171 (Tex. Ct. App. 1992). Such prohibited acts are those enumerated in section 17.46, which include, in relevant part:

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;
>
> \*     \*     \*
>
> (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> \*     \*     \*
>
> (20) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve.

Tex. Bus. & Com. Code § 17.46.[13] "Intent to misrepresent, or knowledge that a representation is untrue, has never been an element of a [TDTPA] 'laundry list' claim unless the specific provision requires intent." *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. Ct. App. 1995) (quoting *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980)). An action may not commence unless a consumer "give[s] written notice to the person at least 60 days before filing the suit." Tex. Bus. & Com. Code § 17.505(a). However, 60-days written notice is not required if

---

[12] A plaintiff must meet two tests to qualify as a consumer: (1) the person must have sought or acquired goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. Tex. Bus. & Com. Code § 17.45(4). In this case, the Plaintiff satisfies both elements.

[13] Section § 17.50(a) also lists as prohibited acts "breach of an express or implied warranty" and "any unconscionable action or course of action by any person." However, as the Court has already ruled, the Plaintiff's claims for breach of warranty and unconscionability fail as a matter of law.

such notice is "rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations." *Id.* § 17.505(b). If no excuse exists for the written notice, the "person against whom a suit is pending" may request the court abate the suit, which the court must do if it "finds that the person is entitled to an abatement because notice was not provided." *Id.* § 17.505(c)–(d).

The Court finds that these differences between the IDCSA and the TDTPA are not "illusory," but potentially outcome determinative. *Nelson*, 288 F.3d at 963. First, the TDTPA excuses a plaintiff from providing pre-suit notice when the statute of limitations is set to expire, while no excuse is allowed under the IDCSA and failure to provide notice limits the claim to one for an incurable deceptive act.[14] Thus, a claim could survive under the TDTPA but fail under the IDCSA depending upon whether notice was given and what evidence was offered. Second, the IDCSA requires that a plaintiff prove "intent" or "knowledge" in showing a violation, while the relevant provisions of the TDTPA do not.[15] If evidence of a product's defects was offered but evidence of a defendant's intent to defraud was not offered, a reasonable jury could find violations of certain TDTPA provisions but not violations of analogous IDCSA provisions.

"Because there is a conflict between the laws of Indiana and [Texas] that is important enough to affect the outcome of the litigation," the Court must decide which law to apply. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). The Court applies the choice-of-law rules of the forum state in which it sits, *Klaxon Co.*, 313 U.S. at 496, and Indiana treats a consumer

---

[14] *Compare* Tex. Bus. & Com. Code § 17.505(b) (excusing 60 days' notice when it is "rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations"), *with* Ind. Code § 24-5-0.5-5(a)(8) (requiring the plaintiff to show "intent to defraud" if the plaintiff fails to provide notice to the defendant).

[15] *Compare* Ind. Code § 24-5-0.5-3(b) (prohibiting supplier sales when the "subject of [the] consumer transaction is of a particular standard . . . if it is not and if the supplier *knows or should reasonably know* that it is not") (emphasis added), *with* Tex. Bus. & Com. Code § 17.46(b) (not requiring a showing of "intent" or "knowledge" for similar violations).

protection claim as recovery in tort, *see McKinney v. State*, 693 N.E.2d 65, 72 (Ind. 1998) (finding that, despite the fact that "fraud is not an element of" an IDCSA claim, "the action is nonetheless based on fraud"). Under Indiana law, the choice-of-law rule governing tort actions is *lex loci delicti*—"the law of the place where the tort was committed is the law of the resulting litigation." *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983). This rule looks to "the state where the last event necessary to make an actor liable for the alleged wrong takes place," *Simon*, 805 N.E.2d at 805, but a court also considers if "the place of the tort bears little connection to this legal action," *Id.* If the court is persuaded that there is little connection with where the alleged wrong occurred, it then considers "the place where the conduct causing the injury occurred, the parties' residences or places of business, and "the place where the relationship is centered." *Id.* at 805–06 (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987).

Neither party properly addressed the choice-of-law issue in this litigation. The Plaintiff's Amended Complaint asserts claims for the IDCSA "and/or" the TDTPA without choosing one over the other.[16] The Defendant cursorily states that "summary judgment is appropriate irrespective of which state's laws apply" (Def.'s Br. 12 n.4.), without providing any analysis as to why. The Court finds that it would not be in the interest of justice to conduct its own choice-of-law analysis, and ultimately determine summary judgment on this claim, without first allowing the parties opportunity to present their view on this issue.

Accordingly, the Court will deny the Defendant's Motion for Summary Judgment as to Count III. The Court denies the Defendant's Motion without deciding whether Indiana or Texas

---

[16] A party may plead "two or more statements of a claim or defense alternatively." Fed. R. Civ. P. 8; *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). However, "[a] tort victim can obtain only one recovery for [her] harm." *Reliance Nat'l Ins. Co. v. Great Lakes Aviation, Ltd.*, 430 F.3d 412, 416 (7th Cir. 2005).

law governs or otherwise suggesting what this Court's decision will be with respect to the consumer protection claim. This denial is without prejudice. Within 30 days of the Order, the Defendant is given leave to refile its Motion for Summary Judgment as to Count III in which it applies the choice-of-law rules and fully addresses whether Indiana or Texas law should govern the Plaintiff's consumer protection claim. Should the Defendant do so, the parties should brief the matter in accordance with Local Rule 56-1.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's Motion for Partial Summary Judgment and GRANTS IN PART and DENIES IN PART the Defendant's Motion for Summary Judgment. Summary Judgment is GRANTED with respect to Counts I and II, and Summary Judgment is DENIED WITHOUT PREJUDICE with respect to Count III.

SO ORDERED on September 19, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION